

**SIGNED this 26 day of June, 2008.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br>    LIBERTY FIBERS CORPORATION<br>    f/k/a Silva Acquisition Corporation,<br><br>                    Debtor. | No. 05-53874<br>Chapter 7 |
| MAURICE K. GUINN, TRUSTEE FOR<br>LIBERTY FIBERS CORPORATION<br><br>    Plaintiff,<br><br>vs.<br><br>TRI-CORE, INC.,<br><br>    Defendant. | <br><br><br><br><br><br>Adv. Pro. No. 07-05013 |

**M E M O R A N D U M**

Appearances:    Tyler C. Huskey, Esq.                   John A. Walker, Esq.
                Gentry, Tipton & McLemore, P.C.         Walker & Walker, P.C.
                Suite 2300                              507 South Gay Street
                900 S. Gay Street                       Suite 1200
                P. O. Box 1990                          P.O. Box 2774
                Knoxville, TN 37901-1990                Knoxville, TN 37901
                Attorney for Maurice K. Guinn, Trustee  Attorney for Tricore, Inc., Defendant

**Marcia Phillips Parsons, United States Bankruptcy Judge**.  This preference action is before the court on a motion for summary judgment filed by the plaintiff, Maurice K. Guinn, trustee for Liberty Fibers Corporation ("Trustee").  The defendant, Tricore, Inc. ("Tricore"), asserts that summary judgment is inappropriate because material factual disputes exist as to various elements of a preference: whether Tricore is a creditor, whether the alleged preferential transfers were in payment of antecedent debts and whether the transfers enabled Tricore to receive more than it would have received in a chapter 7.  Additionally, Tricore asserts that it was a mere conduit for a third party rather than an "initial transferee," and that the transfers are otherwise protected by the ordinary course of business defense of 11 U.S.C. § 547(c)(2).  For the reasons discussed below,  the Trustee's motion for summary judgment will be granted.  This is a core proceeding.  *See* 28 U.S.C. § 157(b)(2)(A) and (F).

I.

The Debtor filed a bankruptcy petition under chapter 11 on September 29, 2005,[1] with the case shortly thereafter converting to chapter 7.  The Trustee commenced the instant action against Tricore on February 26, 2007.  The Trustee alleges in the complaint as amended that within the ninety days proceeding the bankruptcy filing, the Debtor made two payments to Tricore: $49,427.13 by check dated July 1, 2005, and $49,426.66 by check dated July 12, 2005.  The Trustee asserts in the complaint that these payments are avoidable as preferences under 11 U.S.C. § 547(b), and that he is entitled to recovery under 11 U.S.C. § 550 in the amount of $98,853.79.  In its answer, Tricore does not deny the fact of payment but denies or otherwise fails to admit that the elements of a preference exist and raises various affirmative defenses.

The Trustee's motion for summary judgment filed April 8, 2008 is supported by the Trustee's affidavit and by Tricore's responses to the Trustee's interrrogatories, request for

---

[1] Because the Debtor's bankruptcy petition was filed prior to October 17, 2005, the case is governed by the Bankruptcy Code without regard to the amendments made to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  All statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1330 (2004), unless otherwise specifically noted.

2

admissions, and request for production of documents. In conjunction with his motion, the Trustee has also filed a Statement of Undisputed Material Facts, to which Tricore has responded. Tricore's opposition to the Trustee's summary judgment motion is supported by the declaration of Charles Jones, the president of Tricore.

From the foregoing documents, the following facts are presented. Tricore is a small chemical brokerage company employing one broker, Charles Jones, and one administrative employee. In 2003, prior to filing the Debtor's bankruptcy filing, Larry James, an individual chemical broker, contacted Tricore on behalf the Debtor seeking a supplier of titanium dioxide anatase for use in the Debtor's operations. Tricore agreed to locate a supplier of titanium dioxide anatase and facilitate the chemical's shipment to the Debtor. As arranged, the supplier shipped the chemical directly to the Debtor, but the supplier sent the invoice to Tricore, which added a broker's fee of $3,349.82 per load to the amount owed and then sent the Debtor an invoice for the total. The Debtor would remit payment to Tricore, which would then pay the supplier. Tricore split the brokerage fee retained by it with Mr. James.

Between May 2004 and March 2005, the supplier shipped 11 loads of titanium dioxide anatase to the Debtor. In each instance, Tricore issued to the Debtor an invoice with payment terms of net 30, which the Debtor thereafter paid by check. During this pre-preference period, with one exception, the Debtor paid Tricore timely, that is, less than 30 days after the invoice date. In the one exception, invoice number 1337 dated August 17, 2004, the Debtor paid Tricore 41 days after the invoice date, thus, eleven days late.[2]

---

[2]The dates of payment are based on the date of the Debtor's check in each instance. The record before the court does not indicate the precise dates that Tricore received each check during the pre-preference period, other than the general statement in Mr. Jones' declaration that the checks were received by Tricore "anywhere from 21 to 47 days after the issuance of the invoices." Applying this statement, the latest payment received by Tricore during the pre-preference period was 17 days late.
   The Trustee's affidavit does set forth the dates that the Debtor's checks to Tricore cleared the Debtor's bank account. The check used to pay invoice number 1337 cleared the account 48 days after the invoice date. The remaining checks cleared within a range of 24 to 37 days.

During the preference period, Tricore arranged for the delivery of two loads of titanium dioxide anatase to the Debtor. In the first transaction, the supplier shipped its product to the Debtor and invoiced Tricore on April 22, 2005 in the amount of $46,076.84. On the same day, Tricore issued to the Debtor invoice number 1813 in the amount of $49,426.66, with terms of net 30, such that payment was due to Tricore on May 22, 2005. The Debtor failed to pay Tricore before the due date, but Tricore paid the supplier the amount owed it on May 26, 2005. Subsequently, the Debtor issued to Tricore check number 101578, dated July 12, 2005, in the amount of $49,426.66 in payment of Tricore's invoice number 1813. Tricore received the Debtor's check on July 15, 2005, 84 days after the date of the invoice and, therefore, 54 days late. Upon receipt, Tricore deposited the check into its bank account.

In the second transaction during the preference period, the supplier shipped its product to the Debtor and invoiced Tricore in the amount of $46,076.84 on June 3, 2005. On June 7, 2005, Tricore issued to the Debtor invoice number 1879 in the amount of $49,426.66, with terms of net 20, such that payment was due from the Debtor to Tricore on June 27, 2005. This was the only invoice Tricore sent to the Debtor with payment terms of net 20. As with respect to the earlier transaction, the Debtor failed to pay Tricore before the due date, but Tricore paid the supplier on July 13, 2005. Thereafter, the Debtor issued to Tricore check number 101524, dated July 1, 2005, in the amount of $49,427.13 in payment of Tricore's invoice. Tricore received the Debtor's check on August 3, 2005, 57 days after the date of Tricore's invoice and, consequently, 37 days late. Tricore deposited the check in its bank account

II.

Federal Rule of Civil Procedure 56, as incorporated by Federal Rule of Bankruptcy Procedure 7056, mandates the entry of summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The court is not to "'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Browning v. Levy*,

283 F.3d 761, 769 (6th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)). "A genuine issue for trial exists only when there is sufficient 'evidence on which the [court] could reasonably find for the plaintiff.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252, 106 S. Ct. 2505).

The moving party bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986). The burden then shifts to the nonmoving party to produce evidence that would support a finding in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250-52, 106 S. Ct. 2505. In considering the motion, the court must construe all reasonable inferences in favor of the nonmoving party. *Spradlin v. Jarvis (In re Tri-City Turf Club, Inc.)*, 323 F.3d 439, 442 (6th Cir. 2003). The party opposing a motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. The party opposing the motion must 'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* at 442-43 (citations omitted). "If after reviewing the record as a whole a rational factfinder could not find for the nonmoving party, summary judgment is appropriate." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998)).

III.

Under § 547(b) of the Bankruptcy Code, a trustee may avoid certain pre-petition transfers. 11 U.S.C. § 547(b). As set forth specifically therein:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

>    (3) made while the debtor was insolvent;
>
>    (4) made-
>
>       (A) on or within 90 days before the date of the filing of the petition; or
>
>       (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
>    (5) that enables such creditor to receive more than such creditor would receive if-
>
>       (A) the case were a case under chapter 7 of this title;
>
>       (B) the transfer had not been made; and
>
>       (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).  "All five elements are prerequisites to the finding of a voidable preference." *Ray v. Sec. Mut. Fin. Corp. (In re Arnett)*, 731 F.2d 358, 360 (6th Cir. 1984).  The Trustee bears the burden of proving that these elements have been established.  11 U.S.C. § 547(g).

It is undisputed that the payments by the Debtor to Tricore were transfers of the Debtor's property and that the payments were made within 90 days before the date of the filing of the petition.  As to the insolvency requirement, "the debtor is presumed, [for purposes of § 547], to have been insolvent on and during the 90 days immediately preceding the date of the filing of the bankruptcy petition."  11 U.S.C. § 547(f).  This presumption is sufficient to carry the Debtor's burden of establishing insolvency unless Tricore comes forward with some evidence to rebut the presumption.  *See Intercontinental Polymers, Inc. v. Equistar Chems., LP (In re Intercontinental Polymers, Inc.)*, 359 B.R. 868, 872 (Bankr. E.D. Tenn. 2005).  Tricore has presented no evidence to rebut the Debtor's insolvency, and accordingly, this element of a preference is established.

The remaining elements of a preference are denied by Tricore.  It argues that genuine issues of material fact exist as to whether Tricore was a creditor of the Debtor, whether the transfers at issue were made on account of an antecedent debt, and whether the transfers enabled Tricore to receive more than it would have received in a case under chapter 7.  With respect to

the last issue, however, Tricore's memorandum of law fails to address why this element of a preference has not been established by the Trustee. The Sixth Circuit Court of Appeals has stated that "[u]nless the estate is sufficient to provide a 100% distribution, any unsecured creditor . . . who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F. 2d 458, 465 (6th Cir. 1991). The Trustee states in his affidavit that "[t]here will not be a 100% distribution to the unsecured creditors in this Chapter 7 case. Unsecured creditors are expected to receive little to no dividend on their allowed claims in this Chapter 7 case." Nothing in Mr. Jones' declaration or in the documents before the court dispute the Trustee's statement. Accordingly, the court finds that there is no genuine issue of material fact as to the § 547(b)(5) element of a preference and that it has been established by the Trustee.

As to the requirements that the transfer be to or for the benefit of a creditor and on account of an antecedent debt, Tricore asserts that these elements are absent because Tricore was a mere conduit for the payments, with the exception of the brokerage fee portions. In support of this proposition, Tricore cites the fact that it was never in possession of the goods purchased by the Debtor and references a statement by Mr. Jones in his declaration that "[t]he funds received from the Debtor, minus a small broker's fee, were earmarked for payment to the supplier."

The word "creditor" is defined by the Bankruptcy Code as "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). The declaration of Charles Jones confirms that the Debtor made the transfers to Tricore in payment of invoices sent by Tricore to the Debtor. Tricore had a right to payment as evidenced by these invoices because it had arranged for titanium dioxide anatase to be shipped to the Debtor and had even already paid the supplier for the product. Thus, it was clear that Tricore was a creditor of the Debtor, despite the fact that it never had the product in its possession. Moreover, while Tricore's

usual practice may have been to "earmark" a portion of the money it received from the Debtor for subsequent payment to the supplier, with respect to the two transfers in question it is undisputed that Tricore had already paid the supplier at the time it received payment from the Debtor. Accordingly, the Debtor's transfers were to a "creditor."

These facts also establish that the transfers to Tricore by the Debtor were "for or on account of an antecedent debt owed by the debtor before such transfer was made[.]" A debt is antecedent if it was incurred prior to the transfer of a debtor's property. *See In re Intercontinental Polymers, Inc.*, 359 B.R. at 872 n.1 (citing *Southmark Corp v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 316 (5th Cir. 1996)). The debts to Tricore were incurred by the Debtor, as represented by the invoices sent by Tricore to the Debtor, prior to the Debtor's payment to Tricore. As such, based on all of the foregoing, there is no material fact in dispute and all of the elements of a preference under § 547(b) have been established.

As an alternative to its argument that the transfers to it were not preferential, Tricore maintains that regardless of the alleged avoidability of the transfers, they may not be recovered from Tricore under § 550 because it was not an "initial transferee." Section 550 states that to the extent a transfer is avoided under § 547, the Trustee may recover the property transferred from the "initial transferee of such transfer or the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). According to Tricore, a factual issue exists regarding its role in the transactions in question and its ability to exercise dominion and control over the transferred funds, thereby precluding summary judgment in favor of the Trustee. As evidence of its lack of control, Tricore references the previously quoted statement in Mr. Jones' declaration that "[t]he funds received from the Debtor . . . were earmarked for payment to the supplier."

The Bankruptcy Code does not define the term "initial transferee," but "[g]enerally, the party who receives a transfer of property directly from the debtor is the initial transferee." 5 Collier on Bankruptcy ¶ 550.02[4][a] at 550-18 (15th ed. rev. 2008). According to the Sixth Circuit, "[a]n initial transferee is one who receives money from a person or entity later in bankruptcy, and has dominion over the funds." *First Nat'l Bank of Barnesville v. Rafoth (In re*

8

*Baker & Getty Fin. Servs., Inc.)*, 974 F.2d 712, 722 (6th Cir. 1992). In contrast, parties who did not have sufficient dominion or control over the property transferred and were instead acting as mere conduits facilitating the transfer from the debtor to the third party have been held not be to be transferees. 5 Collier on Bankruptcy ¶ 550.02[4][a] at 550-18 (15th ed. rev. 2008). "[A] party is not to be considered an initial transferee if it is merely an agent who has no legal authority to stop the principal from doing what he or she likes with the funds at issue." *Taunt v. Hurtado (In re Hurtado)*, 342 F.3d 528, 534 (6th Cir. 2003) (applying dominion-and-control test for "initial transferee" under 11 U.S.C. § 550(a); "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes")(quoting *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F. 2d 890, 893 (7th Cir. 1988)).

Applying these principles to the instant case, it is clear that Tricore was an "initial transferee" rather than a mere conduit. The Debtor's checks were payable to Tricore, and Tricore admits in its response to the Trustee's interrogatories that it deposited the checks in its bank account. There is no evidence that Tricore was acting as either the Debtor's or the supplier's agent with respect to the money or that it did not have complete control over and legal title to the funds paid it by the Debtor. To the contrary, as previously noted, regardless of its standard procedure, with respect to the two transfers in question Tricore had already paid the supplier so it was free to put the funds to its own purposes.

Moreover, the court questions whether Tricore would be considered a mere conduit even if it had not paid the supplier prior to its receipt of the funds from the Debtor. The supplier directly invoiced Tricore for the titanium dioxide anatase delivered to the Debtor, with Tricore then separately invoicing the Debtor for payment.[3] There is no indication on Tricore's invoices

---

[3]It has been held that a creditor of the debtor cannot be a mere conduit for a third party. *See In re Cypress Rests. of Ga., Inc.*, 332 B.R. 60, 65 (Bankr. M.D. Fla. 2005). "A true conduit's obligation to the transferee would not arise until the transferor paid the conduit and the amount of the obligation would depend on the amount the transferor paid to the conduit." *Id*. In this instance, however, Tricore's obligation to pay the supplier arose before it received payment from

that the Debtor actually owed, or would be paying the supplier rather than Tricore. Similarly, there is no evidence that the Debtor earmarked the monies that it was paying Tricore for payment by Tricore to the supplier such that Tricore lacked the discretion to use the funds for its own benefit. The fact that Tricore may have on its own made the decision to "earmark" the funds for payment to the supplier is of no avail and to the contrary evidences that Tricore had the requisite dominion and control over the funds to do with them whatever Tricore wished. *Cf. In re Hurtado*, 342 F.3d at 535 (Rejecting defendant's argument that she was not an initial transferee, the court of appeals noted that defendant had been given legal title to the funds; she had placed the funds in her bank account which under Michigan law made the funds presumptively hers; and no formal contractual arrangement existed that controlled her disposition of the funds. "[The defendant] points to no legal recourse that the debtors would have had if she had chosen to use the funds to her own benefit. The fact that she did not choose to use the funds in that manner in no way undercuts the fact that she had that ability.").

Tricore further argues that even if the transfers were preferential, the transfers were made in the ordinary course of business, and the Trustee is therefore precluded from avoiding them under 11 U.S.C. § 547(c)(2).[4] Section 547(c)(2) of the Bankruptcy Code provides that the Trustee may not avoid a transfer,

> to the extent that such transfer was–
>
> > (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
> >
> > (B) made in the ordinary course of business or financial affairs of the

---

the Debtor and did not depend on whether it received payment from the Debtor. Tricore's duty to pay its own debts to the supplier out of its revenue does not make it a mere conduit. *See id.*

[4]In its answer, Tricore also asserted affirmative defenses under § 547(c)(1) and (4). However, Tricore acknowledged in its responses to the Trustee's interrogatories that neither defense applies to the facts of this case. Moreover, Tricore did not argue either exception in its response to the Trustee's summary judgment motion. Accordingly, to the extent the Trustee seeks summary judgment as to § 547(c)(1) and (4), the motion will be granted.

>       debtor and the transferee; and
>
>       (C) made according to ordinary business terms

11 U.S.C. § 547(c)(2). Under § 547(g), Tricore "has the burden of proving the unavoidability of a transfer under subsection (c) of this section." 11 U.S.C. § 547(g). Because the provisions of § 547(c)(2) are written in the conjunctive, Tricore must prove all three elements of this subsection in order to prevail on this defense. *See Logan v. Basic Distrib. Corp. (In re Fred Hawes Org., Inc.)*, 957 F.2d 239, 244 (6th Cir. 1992). Additionally, in applying the § 547(c) exceptions, the date of receipt by the transferee is the operative date. *Brown v. Shell Canada Ltd. (In re Tenn. Chem. Co.)*, 112 F. 3d 234, 238 (6th Cir. 1997).

In his memorandum in support of summary judgment, the Trustee states that, for purposes of the court's summary ruling only, he does not dispute the existence of paragraph (A) and (C) of § 547(c)(2). He contends, however, that with respect to paragraph (b), there is no issue of material fact and he is entitled to judgment as a matter of law. According to the Trustee, the two preferential payments made by the Debtor to Tricore were not in the ordinary course of the parties' business because, with the exception of invoice number 1459, the Debtor had paid all previous invoices within thirty days, in accordance with the invoice terms of net 30. During the preference period, however, the Debtor paid invoice number 1813 by check dated July 12, 2005, 81 days after the date of invoice, while invoice number 1879 was paid by check dated 57 days after the invoice date. Moreover, invoice number 1879 had terms of net 20, which was the only invoice to have these terms. The Trustee argues that Tricore changed the terms of invoice number 1879 because of the Debtor's untimely payment of invoice number 1813.

In response, Tricore notes that the price the Debtor paid for titanium dioxide anatase did not increase during the preference period and that the Debtor's manner of payment, i.e., by check, also did not change. As to the delay in payment during the preference period, Tricore argues that the timing is, nonetheless, generally consistent with the parties' prepetition course of dealing and does not represent a marked deviation. In support of this proposition, Tricore relies on Mr. Jones' statement in his declaration that "[t]he course of dealing between Tricore and the

Debtor during the preference period was consistent with the course of dealing between the parties prior to the preference period."

Subsection (B) of § 547(c)(2) is the subjective component of the ordinary course of business defense. *In re Fred Hawes Org., Inc.*, 957 F.2d at 244. "The subjective prong requires proof that the debt and its payment are ordinary in relation to other business dealings between *that* creditor and *that* debtor." *Id*. As stated by the Sixth Circuit Court of Appeals in *Fred Hawes*:

> With respect to subsection (B), the subjective component, the courts generally eschew precise legal tests and instead engage in a fact-specific analysis. In doing so, they examine several factors, "including timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made." Late payment of a debt has been considered particularly important in determining whether the payment is ordinary. A late payment will be considered "ordinary" only upon a showing that late payments were the normal course of business between the parties.

*In re Fred Hawes Org., Inc.*, 957 F.2d at 244 (internal citations omitted). In a subsequent decision, the court of appeals reiterated that, in reaching a decision on the ordinary course question, a bankruptcy court was to consider several factors, including "the history of the parties' dealings with each other, timing, amount at issue, and the circumstances of the transaction," and that "[g]enerally, the entire course of dealing is considered." *In re Tenn. Chem. Co.*,112 F. 3d at 237. "[T]he 'ordinary course of business' exception is intended to . . . allow[] suppliers and other furnishers of credit to receive payment within the course that has developed in the commercial relationship between the parties unless substantial deviations from established practices occur . . . ." *Id*. at 238.

Applying this standard to the facts of the instant case, the court concludes that the Trustee is entitled to summary judgment on this issue. While Tricore is correct that neither the manner nor amount of payments changed during the preference period, substantial deviations from the parties' established practices did take place, particularly with respect to the timing of payments. Prior to the preference period, the Debtor's checks, with one exception, were dated within the

thirty-day payment period specified in the invoices. Although the dates these payments were actually received by Tricore are not in the record, the dates the checks cleared the bank indicate that Tricore received payment either before or within a few days after the 30-day payment date. As previously noted, Tricore's customary practice was to receive payment from the Debtor and then to pay the supplier. There is no indication that during the pre-preference period Tricore was required to deviate from this established practice by paying the supplier before it received payment from the Debtor.

In the preference period, however, the Debtor failed to cut checks to Tricore during the invoice-payment period, with Tricore not even receiving payment until 54 days after expiration of the 30-day payment period with respect to the first invoice, and 37 days after expiration of the 20-day repayment period for the second invoice. When these late payments are compared to the parties' prior course of dealing where the most delinquent check received by Tricore was 17 days late, the contrast is readily apparent. The noncomformity of these payments with past practices is further evidenced by the fact that the Debtor paid Tricore so late that it was forced to pay the supplier prior to receiving payment from the Debtor. Moreover, the court can only assume, as urged by the Trustee, that it was the late payment with respect to the first preferential transfer that caused Tricore to change its payment terms from 30 days to 20 days. In light of these undisputed facts, Mr. Jones' declaration that the course of dealing between Tricore and the Debtor during the preference period was consistent with the parties' prior course of dealing is insufficient to create a genuine issue of material fact as to the ordinary course of business defense.

Lastly, Tricore argues that recovery under § 550(a) of an avoided preferential transfer must be "for the benefit of the estate."[5] Citing the Trustee's statement in his affidavit that unsecured creditors may not receive any distribution on their allowed claims, Tricore argues that

---

[5] Section 550(a) of the Bankruptcy Code provides that, subject to certain exceptions, "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, *for the benefit of the estate*, the property transferred, or, if the court so order, the value of such property, from . . . ." 11 U.S.C. § 550(a) [emphasis added].

the Trustee has failed to establish that recovery of any preferential transfer would benefit the estate and therefore his summary judgment must be denied.

The phrase "benefit of the estate," however, is not synonymous with "payment to general unsecured creditors." *Gonzales v. Conagra Grocery Prods. Co. (In re Furr's Supermarkets, Inc.)*, 373 B.R. 691, 699 (B.A.P. 10th Cir. 2007). "Benefit of the estate" is to be given a much broader interpretation. *Id*. As explained by the Court of Appeals for the Seventh Circuit, "[s]ection 550(a) speaks of benefit to *the estate* – which in bankruptcy parlance denotes the set of all potentially interested parties – rather than to any particular class of creditors." *Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290, 293 (7th Cir. 2003). *See also Calpine Corp. v. Rosetta Res. Inc. (In re Calpine Corp.)*, 377 B.R. 808, 813 (Bankr. S.D. N.Y. 2007) (quoting *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 811-12 (9th Cir. 1994) ("Courts construe the 'benefit to the estate' requirement broadly, permitting recovery under section 550(a) even in cases where distribution to unsecured creditors is fixed by a plan of reorganization and in no way varies with recovery of avoidable transfers.")).[6]

"The determination of whether a recovery would benefit the estate is done on a case-by-case basis." *In re Furr's Supermarkets, Inc.*, 373 B.R. at 699. "If the recovery will have some positive benefit to the estate or its creditors . . . recovery may be had even if such benefit is indirect." 5 Collier on Bankruptcy ¶ 550.02[2] at 550-7 (15th ed. rev. 2008). In the present case, the Trustee is seeking recovery of the preferential transfers on behalf of the chapter 7 estate. While recovery may little benefit prepetition unsecured creditors, it will benefit the estate

---

[6]Tricore relies on *Congress Credit Corp. v. AJC International* to support its assertion that "[i]n order for recovery of a preferential transfer to benefit the estate, there must be funds resulting from the recovery which would be available for distribution to unsecured creditors." *See Congress Credit Corp. v. AJC Int'l*, 186 B.R. 555, 559 (Bankr. D. P.R. 1995). In *In re Furr's Supermarkets, Inc.*, the Bankruptcy Appellate Panel for the 10th Circuit Court of Appeals distinguished the *Congress* case based on the fact that the trustee in *Congress* sought to recover the exact amount of the secured creditor's claim, making it "easy for the court to characterize the trustee as acting 'as a mere conduit for the benefit of the secured creditors only.'" *In re Furr's Supermarkets, Inc.*, 373 B.R. at 700 (quoting *Congress Credit Corp. v. AJC Int'l*, 186 B.R. at 559 (internal citations omitted)).

through the payment of administrative expenses, which is generally recognize to constitute a "benefit to the estate" within the meaning of § 550(a). *See In re Sweetwater,* 884 F. 2d 1323, 1327 (10th Cir. 1989); *In re Furr's Supermarkets, Inc.*, 373 B.R. at 699-700. Accordingly, Tricore's argument in this regard must be rejected.

IV.

In conclusion, the court finds that there is no genuine issue of material fact and the Trustee is entitled to summary judgment as a matter of law. The Trustee has established all of the elements of a preference under 11 U.S.C. § 547(b). The Trustee has also established that Tricore will be unable to prevail on any of the § 547(c) exceptions. Because Tricore is an initial transferee under § 550(a) and recovery will be for the benefit of the estate, the Trustee is entitled to judgment in its favor against Tricore. The court will enter an order to this effect.

# # #